## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
KENNETH G. WALSH              :     Civ. No. 3:17CV01032(AWT)
                              :
v.                            :
                              :
FRANCIS ST. DENIS             :     September 20, 2017
                              :
------------------------------x
```

## RULING ON RENEWED PLAINTIFF'S EMERGENCY APPLICATION FOR PREJUDGMENT REMEDY [Doc. #15]

Plaintiff Kenneth G. Walsh ("plaintiff") has filed a renewed application for prejudgment remedy. [Doc. #15].[1] For the reasons articulated below, the Court **GRANTS, in part,** plaintiff's Renewed Emergency Application for Prejudgment Remedy [**Doc. #15**] ("motion for PJR").

## I.   BACKGROUND

Plaintiff brings this action against Francis St. Denis ("defendant" or "Francis St. Denis"), the father of plaintiff's former employer Thomas St. Denis. Plaintiff alleges that on January 5, 2015, Thomas St. Denis fraudulently transferred assets to defendant at a time when Thomas St. Denis and his companies "owed Plaintiff in excess of $59,000 for unpaid wages[.]" Doc. #1, Complaint at ¶53.

---

[1] Plaintiff commenced this action as a self-represented party and filed the motion for PJR in his self-represented capacity. On August 31, 2017, Attorney Patrick Klingman filed an appearance on behalf of plaintiff. [Doc. #27].

Plaintiff's Complaint asserts three causes of action against defendant, Francis St. Denis: (1) "Actual Fraud" in violation of the Connecticut Uniform Fraudulent Transfer Act ("CUFTA"), section 52-552e(a)(1) of the Connecticut General Statutes; (2) "Constructive Fraud" in violation of CUFTA, section 52-552e(a)(2) of the Connecticut General Statutes; and (3) common law fraudulent transfer. See generally Doc. #1, Complaint.

Simultaneously with the Complaint, plaintiff filed an Ex Parte Application for Prejudgment Remedy ("initial PJR application"). [Doc. #2]. On June 23, 2017, Judge Alvin W. Thompson referred the initial PJR application to the undersigned. [Doc. #8]. On June 26, 2017, the Court denied, without prejudice to re-filing, plaintiff's initial PJR application on the grounds that: (1) plaintiff had failed to demonstrate circumstances warranting ex parte consideration of his application pursuant to Connecticut General Statutes section 52-278e; and (2) plaintiff's application was procedurally defective pursuant to Connecticut General Statutes section 52-278d. See generally Doc. #9.

On July 24, 2017, plaintiff filed a motion for default against defendant Francis St. Denis for failure to respond to the Complaint. [Doc. #13]. The Clerk of the Court granted that

motion on July 25, 2017, and required that plaintiff file a
motion for default judgment by August 24, 2017. [Doc. #14].

On July 27, 2017, plaintiff filed the motion for PJR, with
two supporting affidavits. [Doc. #15]. On this same date,
plaintiff also filed a Motion to Disclose Property and Assets.
[Doc. #16]. On July 28, 2017, Judge Thompson referred those
motions to the undersigned. [Doc. #17]. On August 9, 2017, the
Court denied plaintiff's Motion to Disclose Property and Assets
because it sought the disclosure of assets from a non-appearing
defendant, which is prohibited by the plain language of the
applicable Connecticut statute. See Doc. #19 (relying on Conn.
Gen. Stat. §52-278n(a)). The Court scheduled an evidentiary
hearing on plaintiff's motion for PJR for September 5, 2017
[Doc. #20], and entered a pre-hearing scheduling order and order
for hearing and notice. [Doc. ##21, 22].

In compliance with the Court's order, plaintiff filed a
pre-hearing memorandum in further support of his motion for PJR.
[Doc. #25]. Following a partially granted request for an
extension of time to August 30, 2017, [Doc. #24], on August 31,
2017, plaintiff filed his Motion for Default Judgment as to
defendant Francis St. Denis. [Doc. #26].

The Court held an evidentiary hearing on plaintiff's motion
for PJR on September 5, 2017. [Doc. #29]. In support of
plaintiff's motion, in addition to his own testimony, plaintiff

presented the testimony of: the general manager of Norwalk Self Storage, Kurt Price; Thomas St. Denis' former accountant, Paul Costello; and the estranged wife of Thomas St. Denis, Daelte Lima St. Denis. See Doc. #30. Plaintiff also offered documentary exhibits in support of his motion for PJR. See id.[2]

## II.  **PROBABLE CAUSE STANDARD**

Although the Federal Rules of Civil Procedure govern the conduct of an action in federal court, state law determines when and how a provisional remedy may be obtained. See Fed. R. Civ. P. 64; Bahrain Telecomm. Co. v. DiscoveryTel, Inc., 476 F. Supp. 2d 176, 183 (D. Conn. 2007). "Under Connecticut law, a prejudgment remedy is appropriate if the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or setoffs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought." Roberts v. TriPlanet Partners, LLC, 950 F. Supp.

---

[2] On September 13, 2017, the Court held a telephonic status conference to address the amount in controversy alleged on the face of the Complaint and the existence of diversity jurisdiction. See Doc. ##32, 33. Following that conference, plaintiff filed a Supplemental Response addressing the Court's inquiry. See Doc. #34. At this time, and for the limited purpose of proceeding with the disposition of plaintiff's motion for PJR, the Court finds that plaintiff has adequately addressed the Court's concerns regarding the sufficiency of the Complaint's allegations concerning the existence of diversity jurisdiction.

2d 418, 420 (D. Conn. 2013) (internal quotation marks omitted) (quoting Conn. Gen. Stat. §52-278d(a)).

"Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false." TES Franchising, LLC v. Feldman, 943 A.2d 406, 411 (Conn. 2008) (citation omitted). Connecticut courts have defined "probable cause" in this context

> as "a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." Three S. Development Co. v. Santore, 193 Conn. 174, 175, 474 A.2d 795 (1984) (citation omitted). Thus, the plaintiff does not have to prove its case by a preponderance of the evidence, but must show that there is probable cause to sustain the validity of the claim. New England Land Co., Ltd. v. De Markey, 213 Conn. 612, 620, 569 A.2d 1098 (1990).

Walpole Woodworkers, Inc. v. Atlas Fencing, Inc., 218 F. Supp. 2d 247, 249 (D. Conn. 2002). "A probable cause hearing for the issuance of a prejudgment remedy is not contemplated to be a full scale trial on the merits of the plaintiff's claim. Rather, the trial court's function is to determine whether there is probable cause to believe that a judgment will be rendered in favor of the plaintiff in a trial on the merits." Roberts, 950 F. Supp. 2d at 421 (internal citations and quotation marks omitted).

"When a plaintiff is seeking a prejudgment remedy based on a fraudulent transfer, 'the plaintiff must establish probable

cause to believe that it can prove by clear and convincing evidence that the transfer was fraudulent.'" Cendant Corp. v. Shelton, 473 F. Supp. 2d 307, 312 (D. Conn. 2007) (quoting Hull v. Joyner, No. CV055000206S, 2006 WL 2605708, at *3 (Conn. Super. Ct. Aug. 25, 2006)).

## III. **DISCUSSION**

Plaintiff's motion seeks the entry of a prejudgment remedy ("PJR") on the entirety of his Complaint. See generally Doc. #15. Plaintiff's motion seeks to secure assets in two separate locations: (1) Unit 4331, located at the Norwalk Self Storage facility, held in the name of defendant Francis St. Denis; and (2) two trailers parked on property in Weston, Connecticut, which property is owned by a limited liability company allegedly controlled by Thomas St. Denis. See Doc. #15 at 2. The proposed order attached to plaintiff's motion for PJR seeks a PJR in the amount of $156,015.63. See Doc. #15-2. This amount roughly matches a judgment entered against Thomas St. Denis for wages owed to plaintiff, plus interest, attorney's fees, and other statutorily prescribed damages. See Doc. #1, Complaint at ¶47. At the September 5, 2017, evidentiary hearing, plaintiff clarified that he seeks a PJR against defendant Francis St. Denis in the amount of $59,375.00, and seeks to attach only storage unit 4331, and any contents contained therein, located at the Norwalk Self Storage facility.

6

At the direction of the Court, on September 7, 2017, plaintiff filed a supplemental submission addressing: (1) the evidence before the Court supporting plaintiff's claim for a PJR on his common law fraudulent transfer claim; and (2) the import, if any, of the possibility that the property held within the storage unit is the marital property of Thomas St. Denis and Daelte Lima St. Denis. See Doc. #31. In his supplemental submission, plaintiff limits his motion for PJR to Count I of the Complaint, which alleges actual fraud pursuant to CUFTA. See Doc. #31 at 3.[3]

Accordingly, the Court turns to whether plaintiff has established probable cause to support the entry of a PJR on Count I of the Complaint.

**A. Findings of Fact**

After considering the well-pleaded allegations of the Complaint,[4] and the evidence presented at the September 5, 2017, evidentiary hearing, the Court finds the following facts established for the limited purpose of deciding the instant motion for PJR.

---

[3] As to the ownership of the contents of any items held within the storage unit, the Court concurs that the issue of ownership is premature at this stage of the proceedings.

[4] The well-pleaded allegations of plaintiff's Complaint have been deemed admitted by virtue of defendant's default. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

**1. Plaintiff's Employment with the St. Denis Companies**

Thomas St. Denis is the Chief Executive Officer and President of Lumivisions Architectural Elements, Inc. ("LVAE") and the majority owner and manager of Lumivisions, LLC ("Lumivisions") (LVAE and Lumivisions are hereinafter collectively referred to as the "St. Denis Companies"). See Doc. #1, Complaint at ¶¶1, 10. On or about July 25, 2014, plaintiff entered into an employment agreement with Lumivisions to serve as general counsel for the St. Denis Companies effective as of August 15, 2014 (the "Employment Agreement"). See id. at ¶8. Thomas St. Denis acted as plaintiff's employer under the Employment Agreement. See id. at ¶¶9-10.[5]

The Employment Agreement provided that the St. Denis Companies would pay plaintiff $6,250.00 per month, for a total base salary of $75,000.00 per year. See Doc. #1, Complaint at

---

[5] Although the uncontested allegations of the Complaint sufficiently establish that Thomas St. Denis was plaintiff's employer for purposes of the Connecticut Wage Statute, see Doc. #1, Complaint at ¶¶9-10, the Court takes judicial notice of its prior finding in Walsh v. St. Denis, that Thomas St. Denis is plaintiff's employer for purposes of the Connecticut Wage Statute. See Walsh v. St. Denis, No. 3:16CV945(AWT) ("Walsh I"), Doc. #43 at 17-18 (D. Conn. Apr. 14, 2017); see also Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: ... (1) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

¶11.[6] The Employment Agreement also provided that plaintiff was to be immediately granted a five percent (5%) equity position in Lumivisions. See Doc. #1, Complaint at ¶12. Under the Employment Agreement, upon the "successful conclusion" of _Lumivisions Architectural Elements, Inc. v. Spanlite Projects Ltd._, No. 3:13CV1729(JAM) (D. Conn. Nov. 19, 2013), plaintiff was also entitled to a milestone payment of either $50,000.00 or an additional three percent (3%) equity interest in Lumivisions. See _id._ at ¶13. The Employment Agreement defined "successful conclusion" as meaning that "Lumivisions will have the right to market and sell Spanlite technologies or the next generation of said technologies in North, South and Central America on terms acceptable to the Company." _Id._

Plaintiff achieved a "successful conclusion" –- as defined by the Employment Agreement –- of the _Spanlite_ litigation. See _id._ at ¶¶14-16. Specifically, in December 2014, the parties to

---

[6] Plaintiff does not attach a copy of the Employment Agreement to the Complaint, nor was this document offered as an exhibit at the September 5, 2017, evidentiary hearing. However, plaintiff quotes the relevant provisions of the Employment Agreement in the Complaint. See Doc. #1, Complaint at ¶¶11-13. The Court also takes judicial notice of the Employment Agreement, a copy of which is attached to the complaint filed in _Walsh I_. See _Walsh I_, Doc. #1-1 (D. Conn. June 16, 2016). Plaintiff testified that the document attached to the complaint in _Walsh I_ is the same Employment Agreement referenced in the Complaint here. The Court credits that testimony. Portions of the Employment Agreement were also read into the record during the September 5, 2017, evidentiary hearing.

the Spanlite litigation reached a settlement agreement pursuant to which LVAE was granted the exclusive right to market, sell, manufacture and distribute Spanlite technologies to the architectural and designer communities in the United States, Central and South America. See Doc. #1, Complaint at ¶15. Having reached such a "successful conclusion" of the Spanlite litigation, plaintiff was entitled to the milestone payment of $50,000.00. See id. at ¶17. Plaintiff, however, has never received that milestone payment. See id. Plaintiff also was not paid wages for half of August 2014 and December 2014. See id.

## 2. Conveyance of the Storage Unit to Francis St. Denis

In connection with Walsh I, on February 24, 2017, the undersigned issued a ruling granting, in part, plaintiff's renewed emergency motion for prejudgment remedies against the assets of Thomas St. Denis. See Walsh I, Doc. #31 (D. Conn. Feb. 24, 2017); see also Doc. #1, Complaint at ¶45. Approximately two months later, upon the motion of plaintiff, the Court modified its order for prejudgment remedies, and entered an order permitting plaintiff to secure the contents of storage unit number 4331, located in the Norwalk Self Storage facility. See Walsh I, at Doc. ##46, 47 (D. Conn. Apr. 24, 2017); see also Doc. #1, Complaint at ¶¶49, 50. In support of that modification, and also admitted into evidence in support of the motion for PJR now under consideration, plaintiff presented a rental agreement

dated March 15, 2014, reflecting that storage unit number 4331, located in the Norwalk Self Storage facility, was then held in the name of Thomas St. Denis. See Pl. Ex. 1. Listed as an "alternate name" on the March 15, 2014, agreement is that of defendant, Francis St. Denis. See id.

When plaintiff attempted to secure the contents of the storage unit, Kurt Price, the manager of Norwalk Self Storage, stated that on January 5, 2015, Thomas St. Denis had executed a document entitled "Release of Owner's Interest in Personal Property to Another Individual." See Pl. Ex. 2 (hereinafter the "Release of Interest"). The Release of Interest is dated January 5, 2015. See id. It is signed by Thomas St. Denis, and states:

> I hereby declare that I am the sole legal owner of all personal property stored in space number 4331 located at Norwalk Self Storage in the City of Norwalk, state of Connecticut.
>
> I hereby release all my right, title and interest in and to the above-described premises and convey all personal property therein to Francis St. Denis whose address is 19 Paul Street Auburn MA 01510[.]

Id. Plaintiff also offered as an exhibit a rental agreement reflecting the transfer of the storage unit to defendant, Francis St. Denis, which was admitted into evidence. See Pl. Ex. 3; see also Doc. #30. That agreement provides that Francis St. Denis became the "occupant" of the storage unit, and that Thomas St. Denis became the "alternate name" on that unit. See Pl. Ex. 3. Mr. Price testified that the "alternate name" is provided for

circumstances when the storage facility is unable to reach the occupant of the unit. Mr. Price also testified that, generally, the "alternate name" can enter the facility. Mr. Price testified that because the rental agreement listing Thomas St. Denis as an alternate name does not prohibit Thomas St. Denis from entering the unit, Thomas St. Denis would have had access to the storage unit after it was transferred to defendant, Francis St. Denis.[7] See also Doc. #1, Complaint at ¶55. At the time Thomas St. Denis executed the Release of Interest, Thomas St. Denis owed plaintiff $59,375.00 in unpaid wages. See id. at ¶53.

As testified to by plaintiff and Daelte Lima St. Denis, defendant Francis St. Denis is the father of Thomas St. Denis, and a retired school teacher. See also id. at ¶54. Francis St. Denis currently resides in Auburn, Massachusetts. See id. at ¶5.

**B. Analysis**

Plaintiff seeks the entry of a PJR on Count I of the Complaint, which asserts a claim for actual fraudulent transfer pursuant to Connecticut General Statutes section 52-552e(a)(1). Section 52-552e(a)(1) provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was

---

[7] Mr. Price testified that "the system" at Norwalk Self Storage defaults to permitting the alternate named individual access to the unit. Unless the occupant affirmatively seeks to prohibit the alternate name from accessing the unit, the alternate name is permitted access.

incurred and if the debtor made the transfer or incurred
the obligation: (1) With actual intent to hinder, delay
or defraud any creditor of the debtor[.]

Conn. Gen. Stat. §52-552e(a)(1); see also Canty v. Otto, 41 A.3d 280, 289 (Conn. 2012).

"To prove actual fraudulent transfer under section 52-552e(a)(1) of the Connecticut General Statutes, the [plaintiff] must ultimately prove (1) that a transfer of assets took place, (2) that the claim arose before that transfer took place, and (3) that the transferor intended to hinder, delay or defraud the creditor by making the transfer." Carney v. Horion Invs. Ltd., 107 F. Supp. 3d 216, 231 (D. Conn. 2015). The Court addresses each element in turn.[8]

**1. Transfer of Assets**

As to whether a transfer of assets has occurred, the Connecticut statutes define both "transfer" and "assets" for purposes of CUFTA. "'Transfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Conn. Gen. Stat. §52-552b(12). An asset is generally defined as "property of a

---

[8] Under CUFTA, plaintiff is not required to prove that the transferee, here defendant Francis St. Denis, shared in the fraudulent intent of the transferor, Thomas St. Denis. See Kosiorek v. Smigelski, 54 A.3d 564, 584 (Conn. App. Ct. 2012).

debtor[.]" Conn. Gen. Stat. §52-552b(2). A "debtor" is "a person who is liable on a claim[,]" Conn. Gen. Stat. §52-552b(6), and "'[p]roperty' means anything that may be the subject of ownership." Conn. Gen. Stat. §52-552b(10).

Here, by virtue of defendant's default, and the testimony and documentary evidence received at the September 5, 2017, evidentiary hearing, plaintiff has established probable cause to believe that he will be able to prove by clear and convincing evidence that a transfer of assets occurred. The allegations of plaintiff's Complaint, the testimony of plaintiff, and the Court's judicial notice of the findings in <u>Walsh I</u>, establish probable cause to believe that Thomas St. Denis is a "debtor" for purposes of CUFTA because he is an employer liable to plaintiff for unpaid wages.[9] The uncontested allegations of the Complaint, the documentary evidence presented at the September 5, 2017, evidentiary hearing, and the testimony of plaintiff and Mr. Price, also establish probable cause to believe that Thomas St. Denis' property, namely the contents of storage unit 4331, were transferred to defendant Francis St. Denis by the Release

---

[9] Plaintiff has also presented sufficient evidence to establish probable cause to believe that he will be able to prove by clear and convincing evidence that he is a "creditor" for purposes of CUFTA, which is defined as "a person who has a claim." Conn. Gen. Stat. §52-552b(4). The Court will further address, <u>infra</u>, the evidence establishing probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that he has a "claim" against Thomas St. Denis.

of Interest. <u>See</u> Pl. Exs. 1-3; <u>see also</u> Doc. #1, Complaint at ¶52, Ex. A. Therefore, on the current record, there is probable cause to believe that plaintiff will be able to establish the first element of his actual fraudulent transfer claim by clear and convincing evidence.

**2. Plaintiff's Claim Arose Before the Transfer**

As to whether plaintiff's claim arose before the transfer at issue occurred, the Connecticut statutes broadly define what constitutes a "claim." For purposes of CUFTA, a claim "means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." Conn. Gen. Stat. §52-552b(3). "[A]ctual notice of intended litigation is not required for a fraudulent transfer to occur." <u>Hull</u>, 2006 WL 2605708, at *3. "Knowledge that a claim has arisen and fear of litigation for damages sustained is sufficient." <u>Id.</u> (citing <u>White v. Amenta</u>, 148 A. 345, 346 (Conn. 1930)).

By virtue of defendant's default, and the testimony and documentary evidence received at the September 5, 2017, evidentiary hearing, plaintiff has established probable cause to believe that he will be able to prove by clear and convincing evidence that his claim arose before the transfer of assets occurred. First, the uncontested allegations of the Complaint

and testimony of plaintiff establish probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that plaintiff had a "claim" against Thomas St. Denis for unpaid wages at least as of December 2014. See Doc. #1, Complaint, at ¶¶12, 13-17, 53.

The uncontested allegations of the Complaint, documentary evidence, and the testimony of plaintiff and Mr. Price establish probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that Thomas St. Denis transferred the storage unit and its contents to defendant, Francis St. Denis on January 5, 2015, after plaintiff's claim for unpaid wages arose. See Doc. #1, Complaint at ¶¶52-53; see also Pl. Exs. 1-3. Therefore, on the current record, there is probable cause to believe that plaintiff will be able to establish the second element of his actual fraudulent transfer claim by clear and convincing evidence.

### 3. The Intent of the Transferor

As to whether the transferor, Thomas St. Denis, intended to hinder, delay or defraud the creditor (here, plaintiff) by making the transfer, "[t]he determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances." Town Bank & Tr. Co. v. Benson, 407 A.2d 971, 974 (Conn. 1978) (citation omitted). The transferor's intent "is not ordinarily proven by direct

evidence, but rather, by inference from other facts proven –– the indicia or badges of fraud." Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir. 1991) (citations omitted) (applying Connecticut law); accord The Cadle Co. v. White, No. 3:02CV30(TPS), 2006 WL 798900, at *6 (D. Conn. Mar. 21, 2006) ("Because direct evidence of fraud is often lacking the badges of fraud allow the fact finder to infer fraudulent intent from other proven facts." (citation omitted)).

Connecticut has "adopted the [Uniform Fraudulent Transfer Act] factors for determining whether fraudulent intent is present." Greystone Cmty. Reinvestment Ass'n, Inc. v. Berean Capital, Inc., 638 F. Supp. 2d 278, 292 (D. Conn. 2009) (citations omitted) (alterations added). These factors, or "badges of fraud" are codified at Section 52-552e(b) of the Connecticut General Statutes:

> In determining actual intent ..., consideration may be given, among other factors, to whether: (1) The transfer or obligation was to an insider, (2) the debtor retained possession or control of the property transferred after the transfer, (3) the transfer or obligation was disclosed or concealed, (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (5) the transfer was of substantially all the debtor's assets, (6) the debtor absconded, (7) the debtor removed or concealed assets, (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred, (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred, (10) the transfer occurred shortly before or shortly after a substantial debt was incurred, and (11)

the debtor transferred the essential assets of the
business to a lienor who transferred the assets to an
insider of the debtor.

Conn. Gen. Stat. §52-552e(b); see also The Cadle Co., 2006 WL
798900, at *6 ("To determine whether fraudulent intent is
present the statute directs the fact-finder to consider eleven
factors, otherwise known as the 'badges of fraud.'" (citations
omitted)). Section 52-552e(b) "is not ambiguous. By its plain
language, it does not require that multiple factors be found by
the court before fraudulent intent can be found." People's
United Bank v. Lilly, No. HHD-CV-126031292-S, 2012 WL 6846573,
at *5 (Conn. Super. Ct. Dec. 17, 2012).

By virtue of the default entered in this matter, and the
testimony and documentary evidence received at the September 5,
2017, evidentiary hearing, plaintiff has established probable
cause to believe that he will be able to prove by clear and
convincing evidence that Thomas St. Denis transferred the
storage unit and its contents to defendant Francis St. Denis
with the intent to hinder, delay or defraud plaintiff by making
the transfer.

First, the uncontested allegations of the Complaint and
testimony of plaintiff and Mrs. St. Denis establish probable
cause to believe that plaintiff will be able to prove by clear
and convincing evidence that the transfer of the storage unit
and its contents was made to an "insider." Both plaintiff and

Mrs. St. Denis testified that defendant Francis St. Denis is the father of Thomas St. Denis. An "insider" is defined to include "a relative of the debtor[.]" Conn. Gen. Stat. §52-552b(7)(A)(i). Accordingly, Francis St. Denis is an "insider" under CUFTA. "The courts have uniformly recognized ... that a transfer to a closely related person warrants close scrutiny of the other circumstances, including the nature and extent of the consideration exchanged." Lilly, 2012 WL 6846573, at *6 (citation and internal quotation marks omitted). No evidence has been received regarding any consideration for the transfer.

Second, the uncontested allegations of the Complaint and the testimony of plaintiff and Mr. Price establish probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that Thomas St. Denis retained possession or control of the storage unit and its contents after its transfer. The documentary evidence indicates that Thomas St. Denis remained an "alternate name" on the unit after its transfer to defendant Francis St. Denis. See Pl. Ex. 2. This was confirmed through the testimony of Mr. Price who testified that Thomas St. Denis had access to the storage unit after its transfer to defendant Francis St. Denis. The Court credits that testimony. Therefore, plaintiff has established probable cause to believe that he will be able to establish by clear and convincing evidence this second badge of fraud. See, e.g., In re

Kaiser, 722 F.2d 1574, 1583 (2d Cir. 1983) ("The transfer of property by the debtor to his spouse ... while retaining the use and enjoyment of the property, is a classic badge of fraud." (citation omitted)).

Third, the testimony of Thomas St. Denis' former accountant Paul Costello, and that of Mrs. St. Denis, establish probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that Thomas St. Denis concealed his assets through various trusts and limited liability companies. The Court credits the testimony of Mr. Costello that Thomas St. Denis had such entities created for purposes of "asset protection." This testimony was consistent with that of Mrs. St. Denis, who testified that the family's cars were registered and titled in the name of Francis St. Denis for "tax purposes." Therefore, plaintiff has established probable cause to believe that he will be able to establish by clear and convincing evidence this third badge of fraud. See, e.g., In re Kaiser, 722 F.2d at 1583 ("The shifting of assets by the debtor to a corporation wholly controlled by him is another badge of fraud." (citation omitted)).

Fourth, there is probable cause to believe that plaintiff will be able to prove by clear and convincing evidence that the transfer at issue occurred shortly after Thomas St. Denis incurred a $50,000.00 obligation to plaintiff. The uncontested

allegations of plaintiff's Complaint and the testimony of plaintiff establish that plaintiff became entitled to a $50,000.00 payment upon the successful conclusion of the Spanlite litigation on December 22, 2014. See Doc. #1, Complaint at ¶¶15-17. Approximately two weeks later, on January 5, 2015, Thomas St. Denis transferred the storage unit and its contents to defendant Francis St. Denis. See Pl. Ex. 2; see also Doc. #1, Complaint at ¶52. Therefore, plaintiff has established probable cause to believe that he will be able to establish by clear and convincing evidence this fourth badge of fraud.

Therefore, on the current record, there is probable cause to believe that plaintiff will be able to establish at least four badges of fraud by clear and convincing evidence. The Court finds this sufficient to establish that plaintiff will be able to prove the third element of his actual fraudulent transfer claim by clear and convincing evidence. See, e.g., The Cadle Co., 2006 WL 798900, at *7 ("That five of the eleven badges of fraud are present raises a strong presumption of intent to defraud."); Hamrah v. Emerson, No. CV054012872, 2009 WL 2963281, at *6 (Conn. Super. Ct. Aug. 20, 2009) (finding clear and convincing evidence that property was transferred "with the actual intent of defrauding" where four badges of fraud were present).

In light of the well-pleaded and uncontested allegations of the Complaint, and the evidence presented at the September 5, 2017, evidentiary hearing, the Court finds that plaintiff has established probable cause to believe that he will prevail on Count I of the Complaint, alleging actual fraudulent transfer pursuant to CUFTA.

A separate Order for Prejudgment Remedies implementing this Ruling will issue.

## IV.   **CONCLUSION**

For the reasons stated above, plaintiff's Renewed Emergency Application for Prejudgment Remedy [**Doc. #15**] is **GRANTED, in part**. The motion is **DENIED**, without prejudice, to the extent plaintiff seeks to attach the trailers located on the Weston, Connecticut property, and to the extent the motion seeks to attach in excess of $59,375.00 in assets.

This is not a Recommended Ruling.[10] This is an order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of

---

[10] "It has long been the rule in this district that a PJR application is a non-dispositive motion, and upon referral to a Magistrate Judge, does not require a recommended ruling." Lafarge Bldg. Materials, Inc. v. A. Aiudi & Sons, LLC, No. 3:15CV1203(JBA)(JGM), 2015 WL 6551796, at *8 (D. Conn. Oct. 29, 2015) (collecting cases).

the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 20th day of September, 2017.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
